UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JEREMIAH FARMER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 1:17-cv-0562-WTL-DML |
| | ) |
| PAUL TALBAT, HOUMAN KIANI, | ) |
| MICHAEL PERSON, | ) |
| | ) |
| Defendants. | ) |

**Entry Denying Defendants' Motion for Summary Judgment
and Directing Further Proceedings**

**I. Background**

In this civil action, plaintiff Jeremiah Farmer alleges that the defendants were deliberately indifferent to his serious medical needs when they delayed prescribing him pain medication for nerve and ligament pain and delayed scheduling x-rays and MRI appointments while Mr. Farmer was incarcerated at the Pendleton Correctional Facility ("Pendleton").

Presently pending before the Court is the motion for summary judgment filed by defendants Paul Talbat, Houman Kiani, and Michael Person on June 2, 2017. [Dkt. 22]. The plaintiff filed a response in opposition on June 15, 2017.

The defendants' motion argues that the claims alleged against them are barred under the exhaustion provision of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, that requires a prisoner to first exhaust his available administrative remedies before filing a lawsuit in Court. Mr. Farmer argues in response that he attempted to exhaust his remedies but that it was impossible to complete because of his conflicts with prison staff. The defendants did not file a reply. The defendants' motion for summary judgment, [Dkt. 22], must be **denied** because there

are issues of material fact that must be resolved at a hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008).

## II. Legal Standards

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." *Fed. R. Civ. P.* 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The Court views the facts in the light most favorable to the non-moving party and all reasonable inferences are drawn in the non-movant's favor. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011).

"The applicable substantive law will dictate which facts are material." *National Soffit & Escutcheons, Inc., v. Superior Systems, Inc.,* 98 F.3d 262, 265 (7th Cir. 1996) (citing *Anderson,* 477 U.S. at 248). The substantive law applicable to this motion for summary judgment is the PLRA, which requires that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e; s*ee Porter v. Nussle,* 534 U.S. 516, 524-25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 532 (citation omitted). The requirement to exhaust provides "that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006) (citation omitted). Exhaustion of available administrative remedies "'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'" *Id.* at 90 (*quoting Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). Proper use of the facility's grievance system

requires a prisoner "to file complaints and appeals in the place, and at the time the prison's administrative rules require." *Pozo*, 286 F.3d at 1025; *see also Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

"At the same time, the [PLRA] requires exhaustion only of remedies that are 'available.'" *King v. McCarty,* 781 F.3d 889, 893 (7th Cir. 2015). "Prison officials may not take unfair advantage of the exhaustion requirement," and if they do, their conduct can make the remedy process "unavailable." *Dole*, 438 F.3d at 809. "Administrative remedies are primarily 'unavailable' to prisoners where 'affirmative misconduct' prevents prisoners from pursuing administrative remedies." *Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006) ("[W]hen prison officials prevent inmates from using the administrative process . . . the process that exists on paper becomes unavailable in reality.").

Because exhaustion is an affirmative defense, "the burden of proof is on the prison officials." *Kaba*, 458 F.3d at 680. So here, the defendants bear the burden of demonstrating that the plaintiff failed to exhaust all available administrative remedies before he filed this suit. *Id.* at 681.

### III. Discussion

**A. Undisputed Facts**

The following statement of facts was evaluated pursuant to the standard set forth above. That is, this statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light reasonably most favorable to Mr. Farmer as the non-moving party with respect to the motion for summary judgment. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000).

Indiana Department of Correction ("IDOC") Policy and Administrative Procedure 00-02-301, Offender Grievance Process, is the IDOC policy governing the grievance process and how an offender can exhaust his administrative remedies. Here, Mr. Farmer's grievances span from 2015 to present. The January 1, 2010, version of the Offender Grievance Process applies to any grievance filed prior to April 5, 2015. The April 5, 2015, Offender Grievance Process applies to any grievance filed after that date.

As an inmate incarcerated with the IDOC, Mr. Farmer had access to the Offender Grievance Process to grieve any medical issues. The purpose of the Offender Grievance Process is to provide administrative means by which inmates may resolve concerns and complaints related to their conditions of confinement. All offenders are made aware of the Offender Grievance Process during orientation and a copy of the process is available in various locations within the prisons.

The grievance process consists of three stages. First, an offender must attempt to resolve the grievance informally through officials at the facility by contacting staff to discuss the matter or incident subject to the grievance and seeking informal resolution. If the offender is unable to obtain a resolution of the grievance informally, he may submit a formal written complaint (Level I grievance), to the prison official or staff designated to accept grievances for his housing unit. The formal grievance must be submitted on the correct form and meet the standards set forth in the Offender Grievance Process. Once an adequate grievance form is received, the Grievance Specialist logs the grievance into the OGRE system which assigns it a case number and provides a receipt of the grievance for the offender. A formal grievance must be filed within twenty (20) business days from the event that is the subject of the grievance. If the formal written complaint is not resolved in a manner that satisfies the offender, he may submit an appeal (Level II Grievance

Appeal) within ten (10) working days from the date of receipt of the Level I grievance response. The grievance procedure requires that each grievance be related to only one event or issue.

During the time he was incarcerated at Pendleton, Mr. Farmer filed nineteen (19) formal grievances relating to his health care. He filed six (6) formal grievances concerning his health care at Pendleton after he was transferred to the Westville Correctional Facility. Of the twenty-five total grievances Mr. Farmer filed, only the following grievances could be understood to relate to the claims alleged in the complaint and identified by the Court in the screening entry. *See* dkt. 4.

### 1. *Pendleton Grievances*:

**Grievance No. 86645**. IDOC received a Level I formal grievance from Mr. Farmer on January 30, 2015. At Level I, Mr. Farmer complained that he had not received appropriate treatment for a finger injury, an anal cavity fissure, and back pain. He also sought an increase in the prescription Neurontin. Mr. Farmer did not appeal this grievance to Level II. [Dkt. 23-1 ¶ 13; 23-5, pp. 1-6].

**Grievance No. 86647**. IDOC received a Level I formal grievance from Mr. Farmer on February 5, 2015. At Level I, Mr. Farmer reported he needed treatment for his anal cavity. He requested surgery. He did not appeal to Level II. [Dkt. 23-1 ¶ 14; 23-5, pp. 7-11].

**Grievance No. 87196**. IDOC received a Level I formal grievance from Mr. Farmer on March 19, 2015. At Level I, Mr. Farmer sought surgery or increased pain medications, but he did not appeal to Level II. [Dkt. 23-1, ¶ 17; 23-6, pp. 20-23].

**Grievance No. 88534**. IDOC received a Level I formal grievance from Mr. Farmer on August 17, 2015. At Level I, Mr. Farmer complained that Dr. Talbot and Dr. Kiani would not treat his nasal issues. Mr. Farmer did not file a Level II appeal. [Dkt. 23-1, ¶ 18; 23-5, pp. 21-23].

**Grievance No. 89102**. IDOC received a Level I formal grievance from Mr. Farmer on October 7, 2015. At Level I, Mr. Farmer reported a broken finger and requested an x-ray. He stated that he

attended an orthopedic consult with his finger in a splint as ordered by the prior medical provider but Dr. Talbot had provided no further care. Mr. Farmer wanted surgery. He did not appeal to Level II. [Dkt. 23-1, ¶ 21; 23-5, pp. 31-33].

**Grievance No. 89103**. IDOC received a Level I formal grievance from Mr. Farmer on October 7, 2015. Mr. Farmer complained that he was not receiving appropriate back pain treatment. He further complained that Dr. Kiani and Dr. Talbot refused to renew his Neurontin. Mr. Farmer requested surgery. He did not appeal to Level II. [Dkt. 23-1, ¶ 22; 23-5, pp. 34-36].

**Grievance No. 89104**. IDOC received a Level I formal grievance from Mr. Farmer on October 7, 2015. At Level I, Mr. Farmer reported issues involving his urinary tract and his finger. He did not appeal to Level II. [Dkt. 23-1 ¶ 23; 23-5, pp. 37-39].

**Grievance No. 89501**. IDOC received a Level I formal grievance from Mr. Farmer on November 12, 2015. Mr. Farmer complained that he needed surgery for his back, nose, and finger. He also wanted Neurontin restarted and identified the responsible party as Dr. Talbot. Mr. Farmer did not appeal to Level II. [Dkt. 23-1 ¶ 28; 23-5, pp. 50-55; 28-1, pp. 24-26].

      2.     *Westville Grievances*:

There were no grievances filed concerning the claims raised in the complaint while Mr. Farmer was at Westville.

**C. Analysis**

It is undisputed that Mr. Farmer did not complete the appeal process with respect to the claims identified in the screening process while he was incarcerated at Pendleton. In his affidavit in support of his response in opposition to summary judgment, Mr. Farmer states that conflicts with correctional staff and tampering by administrative staff prevented him from completing the grievance process. For example, he states he put the appeal forms in the bars of his cell for pick

up but that officers refused to collect them. He states that he never received any responses to the grievances he filed at Pendleton and it was not until he was transferred to Westville that he was able to get responses to his grievances. [Dkt. 28].

Mr. Farmer's statements concerning his efforts to exhaust his administrative remedies while at Pendleton are sufficient to create a genuine issue of fact as to whether the grievance process was available to him in relation to the Pendleton Grievances set forth above. "Prison officials may not take unfair advantage of the exhaustion requirement, . . ., and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole*, 438 F.3d at 809.

### IV. Conclusion

The defendants' motion for summary judgment, [Dkt. 22], is **denied** for the reasons set forth above. A *Pavey* hearing will be set by separate entry. If the defendants wish to withdraw their affirmative defense in lieu of having a *Pavey* hearing, they must do so by **August 7, 2017**.

The Court will attempt to recruit volunteer counsel to assist the plaintiff with the *Pavey* hearing if the defense is not withdrawn.

The parties will be given an opportunity to conduct discovery relating only to the issue of exhaustion, if it is required, prior to the *Pavey* hearing.

**IT IS SO ORDERED.**

Date: 7/12/2017

_William T. Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Distribution:

JEREMIAH FARMER
 Inmate Mail/Parcels
CHICAGO - MCC
CHICAGO METROPOLITAN CORRECTIONAL CENTER
Inmate Mail/Parcels
71 WEST VAN BUREN STREET
CHICAGO, IL 60605

Jeb Adam Crandall
BLEEKE  DILLON  CRANDALL ATTORNEYS
jeb@bleekedilloncrandall.com